FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 3 0 2016 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
EDUARDO FLORES and PATRICIA
FLORES,

                        Plaintiffs,

-against-

THE UNITED STATES OF AMERICA,

                        Defendant.
------------------------------------------------------X

MEMORANDUM AND ORDER

CV 14-6614
(Wexler, J.)

APPEARANCES:

    GREENE FITZGERALD ADVOCATES
    BY: Sandra L. Greene, Esq.
    Attorney for Plaintiffs
    2575 Eastern Boulevard
    York, PA 17402

    UNITED STATES ATTORNEYS OFFICE, EASTERN DISTRICT OF NEW YORK
    BY: Robert B. Kambic, Esq.
    Attorney for Defendant
    610 Federal Plaza
    Central Islip, New York 11722

WEXLER, District Judge:

       Plaintiffs Eduardo Flores ("plaintiff" or "Flores") and Patricia Flores ("Patricia Flores") commenced this action against defendant United States of America ("defendant" or the "Government") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671 et seq. Plaintiffs assert claims of false arrest and imprisonment, assault, battery, intentional infliction of emotional distress, negligence, invasion of privacy, malicious prosecution, and abuse of process. Currently before the Court is the Government's motion for summary judgment. Motion, Docket Entry ("DE") [23]. Although the motion is characterized as a "motion to dismiss, or, in the alternative, for summary judgment," the parties were put on notice that the Court would consider it a motion for summary judgment, and they have provided significant briefing and evidentiary support for their positions. The Court heard oral argument on February 26, 2016 and reserved

decision pending additional briefing, which has been submitted and reviewed. For the reasons set forth herein, the motion is granted and the case is dismissed.

## I. BACKGROUND

### A. Factual History

The facts are taken from the complaint and the parties' Rule 56.1 statements and are undisputed unless otherwise indicated. Although the incidents forming the basis of the complaint start in 2008, some recitation of prior events will prove helpful. Unless otherwise indicated, facts prior to 2008 are taken from an order issued by an immigration judge ("IJ") on December 2, 2010. *See* Decision and Order ("12/2/10 IJ Order"), Ex. 5, DE [36].

#### 1. Flores' entry into the United States

Flores was admitted to the United States on or about October 4, 1978 as a non-immigrant authorized to remain for a temporary period not to exceed October 28, 1978. Flores applied for permanent resident status, and an interview was conducted on July 3, 1979. At that interview, Flores' Ecuadoran passport was stamped "temporary evidence of lawful admission for permanent residence."

On November 9, 1979, the predecessor agency to the Department of Homeland Security ("DHS") issued a decision purporting to deny an application for adjustment of status and granting Flores until December 9, 1979 to voluntarily depart the country. On January 14, 1983, Flores was served with an order to show cause charging him with deportability for remaining in the United States longer than permitted. On January 17, 1994, Flores was ordered deported from the United States, and on August 15, 2000, the Board of Immigration Appeals dismissed his appeal of the deportation order. The record is silent as to any events between August 15, 2000 and Flores' detention almost 8 years later.

### 2. Flores' detention

On or about August 12, 2008, Flores was detained by agents of Immigration and Customs Enforcement ("ICE"), a subagency of the DHS. Both plaintiffs were at their home in East Rockaway, New York, when five ICE agents allegedly forced their way into the home without a warrant. Compl. ¶13. The basis for the detention was the pending detention order/order of removal entered on August 15, 2000. *Id.* ¶24. Although Flores provided the agents with a copy of his Ecuadoran passport indicating that he was a lawful permanent resident of the United States, he was nonetheless arrested. *Id.* ¶¶ 18-19. Plaintiffs allege that the ICE agents "grabbed" Flores "in a rough manner, causing him to stumble and resulting in great emotional stress as [he] was forced to endure abusive and hostile language as he was transported from his home and into the custody of ICE." *Id.* ¶16. In addition, he was removed without access to his necessary medicine. *Id.* ¶¶ 21-22. Flores was held in detention "for approximately 3 months." *Id.* ¶26. He was released "for medical reasons to pursue his challenge to his removal free of detention." *Id.*

On November 12, 2008, Flores moved to reopen the removal proceedings before the Immigration Board. The motion to reopen was granted on March 10, 2009, and on March 16, 2010, Flores moved to terminate the proceedings, arguing that his status was adjusted to lawful permanent resident in 1979 and therefore the charge of deportability was improper.

On December 2, 2010, the IJ granted the motion to terminate, finding that Flores was granted lawful permanent resident ("LPR") status by virtue of the stamp placed in his passport in 1979. *See* 12/2/10 IJ Order at 4 ("the Court concludes that [Flores] was, in fact, granted status as a permanent resident."). The IJ further found that therefore Flores was not required to depart the United States by December 9, 1979, and thus the previous decision sustaining the charge of deportability was in error. Although DHS initially sought an appeal of the December 2, 2010

decision, the agency subsequently withdrew its appeal, and the matter was closed on or about May 3, 2011. Compl. ¶29.

On February 8, 2012, Flores received notice that his application to adjust to permanent resident status, the date of which is unknown, had been approved. *See* I-797 Notice of Action, Ex. B, Pls' Opp., DE [27]. He received his "green card" in November 2012. Compl. ¶ 32. Eduardo Flores became a naturalized citizen on or about September 17, 2013. Compl. ¶33.

**B. Procedural History**

<u>1. Administrative claims</u>

Administrative proceedings were commenced by the submission of Standard Form 95 ("SF-95") Claims for Damage, Injury, or Death. The record contains four SF-95 Claims submitted to four different locations, each dated November 10, 2013. The claims were sent to: Charles Akalski, Field Office Director, U.S. Department of Homeland Security in New York, New York ("Claim 1"), p. 56-60 DE [36]; Thomas Decker, Field Office Director, U.S. Department of Homeland Security in Philadelphia, Pennsylvania ("Claim 2"), p. 61-65; Brian M. O'Leary, Chief Immigration Judge, Falls Church, Virginia ("Claim 3"), p. 48-51; and Juan P. Osuna, Director, Executive Office for Immigration Review, Falls Church, Virginia ("Claim 4"), p. 52-55. Each claim contains the following identical information: the Date and Day of Accident, 11/10/2011; the listed claimant, Eduardo Flores; the listed witnesses, Patricia Flores, Bianca Flores, and Dr. Erik Von Kiel; the property damage[1] and personal injuries asserted,[2] and the total amount of damages, $560,000.

---

[1] He claimed property damage of *"[l]imousine loss through forced sale and Claimant's Limousine service business dissolved during Claimant's unlawful detention."*

[2] He claimed "[p]sychological and emotional injury due to unlawful detention, including Post Traumatic Stress Disorder. Exacerbated physical injury due to denial and delayed of [sic] medical care of physical body, including, but not limited to Claimant's heart, eyes, spine, back, legs, skin, arms, requiring surgery, medication, rehabilitation and treatment following Claimant's release from detention. Exacerbation and worsening of known medical conditions including diabetes, high blood pressure, heart disease and pain."

4

Although each SF-95 Claim is dated November 10, 2013, plaintiffs' own evidence establishes that they were sent overnight by FedEx on November 11, 2013. As a result, they were received by the agencies no earlier than November 12, 2013.

The only difference in the SF-95s submitted, other than the recipient, is the basis of the claim set forth in section 8 of the forms. Claim 1 and Claim 2 (collectively, the "DHS Claims") primarily concern the arrest and detention of Flores:

> Claimant was arrested at his home, physically assaulted by agents of the Immigration and Customs Enforcement office upon the assertion that the claimant had no lawful status in the United States while Claimant was in possession of status as a lawful permanent resident. Claimant suffered severe physical injury as the result of being accosted by ICE agents despite their being told that Claimant had heart problems and had just been released from the hospital. Claimant was wrongfully detained by ICE in NY and PA and placed into removal proceedings improperly. During the period of his detention in Pennsylvania, Claimant was delayed and denied medical care. Subsequent to his release from custody, the agency refused to acknowledge his status as a lawful permanent resident and required him to attend unnecessary removal proceedings, even after grant of the Claimant's motion to terminate. The agency failed to pursue any appeal of the grant of the motion to terminate, yet delayed, without just cause or reason, grant of the Claimant's request for documentation of his status as a lawful permanent resident until 11/10/2011.

Claim 3 and Claim 4 (collectively, the United States Citizenship and Immigration Services or "USCIS Claims") were sent to the Immigration Judge and Office for Immigration Review. Those claims concern the removal proceedings:

> Claimant was made subject to a wrongful order of removal determining that he had not acquired status as a lawful permanent resident and Claimant' assertion that he had acquired status as a lawful permanent resident on or about July 3, 1979 was ignored. Board sustained erroneous determination that the Claimant was not a lawful permanent resident. Injury due to this agency error was not result [sic] until 11/10/2011.

There is no evidence of any action taken, or decision issued, on the USCIS Claims. The DHS Claims were denied on May 5, 2014. The denial letter was mailed on May 6, 2014 to plaintiffs' counsel, and tracking information shows that it was delivered on May 9, 2014. The basis for denial was a determination that the claim was not timely filed and thus was barred pursuant to the FTCA. *See* Claim Denial letter of May 5, 2014 ("Claim Denial"), Ex. B to Declaration of Steven M. Brodsky ("Brodsky Decl."), DE [26]. The Claim Denial further advised that a challenge to the determination could be made by filing suit in the appropriate United States District Court "no later than six months after the date of mailing of this notice of final denial." *Id.*

### 2. Commencement of this action

In the complaint, plaintiffs assert their claims against five government agencies or departments: DHS, ICE, United States Justice Department, USCIS, and the Executive Office for Immigration Review. They claim that the actions of officials from these agencies constitute false arrest and imprisonment, assault, battery, intentional infliction of emotional distress, negligence, invasion of privacy, malicious prosecution, and abuse of process under New York law. Compl. ¶37. Their injuries include physical, emotional, and financial injuries, loss of earning capacity, loss of consortium, and loss of enjoyment of life. *Id.* ¶38.

Although the complaint is dated November 5, 2014, it was not filed until November 10, 2014, more than six months after the Claim Denial was mailed. Plaintiffs claim that the complaint was sent to the Court by FedEx and was received on November 6, 2014, but was not filed until November 10, 2014 for procedural reasons.

## II. LEGAL STANDARDS

### A. Summary Judgment

It is well-established that "[s]ummary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to

6

judgment as a matter of law." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party, and "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation and citations omitted). A fact is only material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S. Ct. 2658 (2009) (internal quotation and citation omitted).

## B. FTCA

The FTCA effects a limited waiver of the United States' sovereign immunity for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346. A tort claim under the FTCA must be "presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. §2401(b).

Before pursuing a claim in court, the FTCA requires a claimant to exhaust administrative remedies, stating that an action may not be instituted "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. §2675(a). Once a claimant has exhausted administrative remedies, a suit may be commenced in federal court. The FTCA's statute of limitations requires a plaintiff to file an action "within six months after the date of mailing . . . of final denial of the claim by the agency to which it was presented."

28 U.S.C. § 2401(b). Where an agency fails to issue a final disposition of a claim within six months of its filing, that failure "shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. 28 U.S.C. §2675(a).

Both the 2-year limitation for commencement of administrative action and the 6-month limitation for initiating federal suit are nonjurisdictional and are subject to equitable tolling. *United States v. Kwai Fun Wong*, -- U.S. --, 135 S. Ct. 1625, 1633 (2015) (finding that "[t]he time limits in the FTCA are just time limits, nothing more. Even though they govern litigation against the Government, a court can toll them on equitable grounds.").

## III. DISCUSSION

### A. Timeliness of Filing in this Court

Defendant argues that the complaint in this case is untimely because it was filed on November 10, 2014, more than six months after the mailing of the denial of plaintiffs' claim on May 6, 2014. Plaintiffs have established that the complaint was received by the Clerk's Office in Brooklyn on November 6, 2014, and have suggested that the delay in filing was attributable to counsel's failure to include a Civil Cover sheet. Defendant summarily state that the complaint also lacked a summons.

Plaintiffs rely upon Rule 5(d)(4) of the Federal Rules of Civil Procedure and argue that the complaint should be deemed timely filed on the date of receipt by the clerk's office. Rule 5(d)(4) provides that "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." FED. R. CIV. P. 5(d)(4). Defendant has not challenged plaintiffs' evidence that the complaint was received on November 6th or plaintiffs' statements regarding the reason for the apparent delay between the receipt of the complaint by the Clerk's Office on Thursday, November 6th and its filing on Monday, November 10th. Defendant also has provided neither argument nor legal authority as to why Rule 5(d)(4) should not apply. The Court finds that, application of Rule 5(d)(4) is warranted, and the

complaint should be deemed filed as of the date it was received by the clerk, and thus it was timely filed.

As to the USCIS Claims, it does not appear that they were decided by the agencies notified. Assuming receipt of the claims on or about November 12, 2013, USCIS's failure to issue a decision could be deemed a denial after six months, or May 12, 2014. As Flores had six months from the denial to institute suit, the filing of this complaint was timely as to the USCIS Claims even without operation of Rule 5(d)(4).

## B. Timeliness of Filing with Administrative Agencies

It is undisputed that Flores filed his administrative claims on or about November 12, 2013. As the FTCA requires a claim to be filed within two years of accrual, only claims that accrued on or after November 12, 2011 are timely. "Accrual of an FTCA claim generally begins at the time the injury or harm is inflicted. The statute of limitations begins to run 'when the plaintiff knows both the existence and cause of his injury.'" *Mingo v. United States*, 274 F. Supp. 2d 336, 344 (E.D.N.Y. 2003) (quoting *United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir.1998)).

### 1. Claims against DHS

Flores' claims against DHS are primarily centered upon his arrest on August 12, 2008, physical assault and battery incident to that arrest, his detention until sometime in November 2008, and denial of medical care during his detention. Defendant argues that any claims regarding his arrest and detention accrued in 2008, while plaintiffs insist that they did not accrue until Flores received a Notice of Action from USCIS on February 8, 2012 as "[t]his was the date on which Plaintiff was aware of his injury and who injured him." Pls' Opp. at 6.

Plaintiffs contend that the claims did not accrue until Flores' detention was found to have been unlawful and that this did not occur until he received the USCIS notice on February 8, 2012. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim pursuant

to 42 U.S.C. § 1983 "for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 490, 114 S. Ct. 2364 (1994); *but see Wallace v. Kato*, 549 U.S. 384, 397, 127 S. Ct. 1091 (2007) (noting that in §1983 context, statute of limitations for false arrest in violation of the Fourth Amendment "begins to run at the time the claimant becomes detained pursuant to legal process"). The Second Circuit, however, "has not yet decided whether *Heck* applies to FTCA claims in the immigration context." *Watson v. United States*, 133 F. Supp. 3d 502, 522 (E.D.N.Y. 2015) (applying *Heck* and finding no accrual until claimant's citizenship was established). This Court need not determine this issue in this case, however, as plaintiffs' claims are time-barred in any event.

According to plaintiffs, Flores did not have LPR status until February 8, 2012 when he received an approval notice from USCIS. They argue that the December 2, 2010 IJ decision regarding Flores' status is not a basis for accrual since an immigration judge "has no authority to grant lawful permanent resident status (LPR) status to an alien unless an application for relief seeking LPR status has been granted." Plaintiffs' Amended Sur Reply at 6, DE [45]. Plaintiffs misinterpret the IJ's ruling. She did not grant Flores LPR status herself, but rather found that the stamp placed in his Ecuadoran passport on July 3, 1979 granted him LPR status –"at the time the official stamped [Flores'] passport, [Flores'] application was validly approved, and [Flores'] status was adjusted to that of LPR." 12/2/10 IJ Order at 5. Plaintiff's LPR status was confirmed, not granted, by that decision. As a result, he became aware of his injury, and that the detention had been unlawful, as of the decision date of December 2, 2010. As his administrative claims were not filed until November 12, 2013, well beyond the two year time period, those claims were untimely and properly denied by the agency.

The DHS Claims touched upon two other issues. First, Flores claimed that "the agency refused to acknowledge his status as a lawful permanent resident and required him to attend

10

unnecessary removal proceedings." As with his claims pertaining to his detention, any claim regarding "unnecessary removal proceedings," even if actionable, accrued on December 2, 2010 when his LPR status was confirmed.

The only remaining claim asserted to the administrative agencies concerned an unspecified delay in "documentation of his status as a lawful permanent resident until 11/10/2011."[3] Although the legal basis for any such claim is unclear, it does not present a circumstance actionable under the FTCA. To the extent plaintiffs are suggesting a due process or other constitutional violations, suits for federal, constitutional torts are impermissible under the FTCA. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78, 114 S. Ct. 996 (1994). There is also both insufficient pleading and lack of evidence of any extreme or outrageous conduct necessary to support a claim for intentional infliction of emotional distress.

The record is silent to any allegation or factual evidence concerning the alleged delay in issuing a green card. Government agencies do not always move as swiftly as its petitioners would like, and "[r]egrettably, delay is a natural concomitant of our administrative bureaucracy." *Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989) (discussing delay in Medicare, Social Security and employment benefits systems). Plaintiffs have provided no evidence that the passage of time in this instance was anything more than slow pace of bureaucracy. *See, e.g., Watson v. United States*, No. 14-CV-6459, 2016 WL 748489, at *18 (E.D.N.Y. Feb. 25, 2016) (finding government's failure to provide documentation for 755 days following release from custody was not negligent because "[t]he normal bureaucratic process takes time."); *Mehdi v. United States*, No. 3:08-CV-1531, 2010 WL 2596176, at *4 (D. Conn. June 24, 2010) (applying

---

[3] The source and import of the date "11/10/11" is not explained. If this was the date represented to the agencies as the accrual date, then the claims were untimely as they were not sent to the agencies until November 11, 2013 and were likely received on November 12, 2013.

Connecticut law and noting that a three year delay in processing a naturalization application does "not necessarily lead to valid claims of negligent infliction of emotional distress. Where the government's processes are reasonable, even if they are slow, there can be no such claim."), *aff'd*, 426 F. App'x 35 (2d Cir. 2011).

Finally, Flores has not attributed any damages to the purported delay in obtaining a green card. The property and personal injuries detailed in his administrative claims flow from his detention and exacerbation of injuries due to denial or delay of medical treatment during his detention.

### 2. Claims against USCIS

Flores' USCIS Claims concerned the proceedings conducted prior to his detention in August 2008. Although he did not provide dates in the claims, the record shows that the orders regarding his deportation, issued over his protestations that he held LPR status, were decided in 1983 and 1994. Flores' claims about the earlier removal proceedings are also time-barred. The latest those claims could have accrued would have been December 2, 2010 when the IJ found that Flores was indeed granted LPR status on July 3, 1979 "and that status has remained intact until the present." 12/2/10 IJ Order at 6. Having received the confirmation he had sought, Flores was certainly aware of the existence of his claims.[4]

## C. Applicability of Tolling Provisions

### 1. Equitable Tolling

Plaintiffs have argued that their claims are subject to equitable tolling in light of the "unique factual circumstances presented" and the "inexcusable conduct of the agency." Pls' Opp. at 11, DE [27]. "As a general principle, equitable tolling allows a late filing when a

---

[4] Even if timely, plaintiffs' claims of malicious prosecution and abuse of process against immigration judges, ICE attorneys, and other non-investigative or law enforcement officers are likely barred by the intentional tort exception of the FTCA. 28 U.S.C. § 2680(h).

plaintiff 'has been pursuing his rights diligently and some extraordinary circumstance stood in his way.'" *Boykin v. KeyCorp*, 521 F.3d 202, 218 (2d Cir. 2008) (alterations omitted) (quoting *Torres v. Barnhart*, 417 F.3d 276, 278 (2d Cir. 2005)). The record does not support plaintiffs' statements regarding the agency's actions "for nearly 33 years." The fault for the passage of time cannot be laid entirely at the Government's feet as there are significant time gaps during which no action was taken by either USCIS or Flores. For example, there is no activity between the order to show cause regarding deportability issued in 1983 and the order of removal/deportation in 1994, and although Flores' appeal was denied in August 2000, the next factual allegation concerns his arrest in 2008. More recently, although Flores' motion to reopen removal proceedings was granted on March 10, 2009, he did not move to terminate those proceedings for over a year. Although Flores' tale clearly unfolded over a long time period, it cannot be said that he was diligent in the pursuit of his rights. *Cf. Watson v. United States*, 133 F. Supp. 3d 502, 524 (E.D.N.Y. 2015) (application of equitable tolling appropriate where plaintiff "promptly and continuously asserted his citizenship, and took every action he knew of—or could reasonably be expected to know of—to demonstrate that he was a citizen."). Moreover, Flores was represented by counsel at most points throughout the proceedings and has not presented any other extraordinary circumstances that would justify equitable tolling. *Cf. id.* (extraordinary circumstances included claimant's lack of counsel). Plaintiffs also do not claim that they were prevented by defendant from timely asserting their claims. For all the above reasons, plaintiffs have failed to establish entitlement to equitable tolling of any limitations periods.

2. Continuing Violation Doctrine

Plaintiffs also urge the Court to apply the continuing violation doctrine to cure any statute of limitations deficiencies. Where applicable, the continuing violation doctrine acts as an "exception to the normal knew-or-should-have-known accrual date" and applies "when there is

13

evidence of an ongoing discriminatory policy or practice." *Harris v. City of New York,* 186 F.3d 243, 248 (2d Cir. 1999) (internal quotation and citation omitted). Discrete acts, however, "are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S. Ct. 2061 (2002). To successfully invoke the doctrine, a plaintiff must allege "some non-time-barred acts contributing to the alleged violation." *Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015) (internal quotation and citation omitted).

At oral argument, plaintiffs' counsel argued that Flores was subjected to repeated torts over time. Counsel was given permission to provide supplemental briefing on the availability of the continuing tort doctrine. In that memorandum, plaintiffs assert for the first time that defendant "employed discriminatory practices and policies" against them "through the coordination of improper and unconstitutional actions." Pls' Brief, at 3, DE [51]. Not only are these constitutional claims absent from the complaint, they are also not available under the FTCA. *See Meyer,* 510 U.S. at 477-78. In addition, the doctrine is applied in situations where the conduct is "so outrageous and extreme as to be actionable." *Geiger v. E.I. DuPont Nemours & Co.,* No. 96 CIV. 2757, 1997 WL 83291, at *11 (S.D.N.Y. Feb. 27, 1997) (citing *Bonner v. Guccione,* 916 F. Supp. 271, 277 n.3 (S.D.N.Y.1996)). As discussed *supra,* that is not the case here.

Furthermore, Flores has not identified any non-time barred act. At argument, counsel stated that the last injury occurred on February 8, 2012. The only fact alleged to have happened on that date was that "an approval notice for issuance of a 'green card' [was] sent to him on or about February 8, 2012." Compl. ¶ 32. It is beyond the understanding of this Court how receipt

of such a notice could conceivably be considered a tort. For all these reasons, the continuing violation doctrine is not applicable.

**D. Exhaustion of Derivative Claim**

Defendant contends that Patricia Flores does not have a derivative claim. A claimant must exhaust administrative remedies by presenting her claims to the appropriate agency. If there are multiple claimants, each "must individually satisfy the jurisdictional prerequisite for filing a proper claim." *Hodder v. United States,* 328 F. Supp. 2d 335, 359 (E.D.N.Y. 2004) (internal quotation and citation omitted); *see also Tamares v. United States*, No. 07 Civ. 0688, 2009 WL 691002, at *4 (S.D.N.Y. Mar. 17, 2009) (finding that "a plaintiff's burden is not relieved simply because the agency received relevant materials from a separate claimant for a separate claim, even if the two claims arose out of the same event."). Dismissal for failure to exhaust administrative remedies is appropriate where a spouse fails to file his or her own claim or to provide notice to the United States by expressly including his or her claims with those of the injured spouse. *See, e.g., Christian v. United States,* 859 F. Supp. 2d 468, 477 (E.D.N.Y. 2012) (dismissing derivative claim where administrative claim did not provide notice of the spouse's claim or describe his alleged injuries); *Rodriguez v. United States*, No. 02 Civ. 6947, 2003 WL 21961121, at *2 (S.D.N.Y. Aug.14, 2003) (dismissing claim for failure to exhaust where spouse did not file administrative claim and nothing in the annexed papers referred to a claim by her); *Isahack v. United States*, No. 00 Civ. 9656, 2001 WL 1456519, at *3 (S.D.N.Y. Nov.15, 2001) (dismissing spouse's claims for loss of affection, services, and consortium where he did not file a claim and his claims were not included in his wife's submissions).

Here, plaintiffs argue that the Government was on notice of Patricia Flores' claim because of her letter dated November 26, 2013. *See* Ex D to Pls' Opp. That letter describes the events surrounding Flores' detention on August 12, 2008. She states that "[i]t was a very

15

distressful moment of our lives," that it was "very emotionally and financially distressful to Eduardo and myself, my daughter," and that it was "very hard without Eduardo's earnings to support my family." Any reference to her own injuries is vague, at best, and she also fails to request a specific dollar amount to compensate her for her injuries. *See Adams by Adams v. U.S. Dep't of Hous. & Urban Dev.,* 807 F.2d 318, 320 (2d Cir. 1986) (noting that "the administrative filing prerequisites in [28 U.S.C.] § 2675 encompass a requirement that the request for damages in any administrative claim state a sum certain."); *Rispoli v. United States,* 576 F. Supp. 1398, 1403 (E.D.N.Y. 1983) (dismissing derivative claim in part because spouse failed to assert specific money damages for her alleged injury).

Plaintiffs' belated assertion that this letter constituted Patricia Flores' notice of her own claim is belied by other documentary evidence. Plaintiffs' counsel's transmittal letter, which includes a subject line "Eduardo Flores (FTCA Claim A# 023-337-306)," indicated that she was enclosing "a letter from his wife, Patricia Flores regarding matters related to his claim." Pls' Sur-reply, p. 3 (emphasis supplied). This comports with the indication on all the claims that Patricia Flores was a witness, not a claimant. The insufficiency of the contents of the letter, coupled with the representation made by counsel's transmittal letter and Patricia Flores' designation as a "witness" all lead to the determination that she failed to notify the appropriate agencies of her claims. Accordingly, Patricia Flores' claims must be dismissed for failure to exhaust.

## IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted. The Clerk of the Court is directed to close the case.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
September 30, 2016